STATE OF NORTH CAROLINA v. JAMES EARL WILLIS AND DONNA SUE COX

No. 569A87

(Filed 4 September 1992)

### 1. Jury § 7.14 (NCI3d) — peremptory challenges — racial grounds — failure to show race of challenged jurors

Assuming that the trial court erred in excluding defendant's evidence tending to show that he considered himself to be an Indian in a hearing on a motion to bar the exercise of peremptory challenges on racial grounds and in holding that it could not find defendant to be a member of a cognizable minority, these errors were not prejudicial where the State exercised nine peremptory challenges to which defendant objected but the record does not show the race of any challenged juror.

**Am Jur 2d, Jury §§ 233-237.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

### 2. Evidence and Witnesses § 2473 (NCI4th) — plea bargain — motion to disclose — no showing bargain made

The trial court did not err in the denial of one defendant's motion to compel the State to disclose any plea bargain made by any codefendant or accomplice where there is nothing in the record to indicate that a plea bargain had been made by any witness against the defendants. N.C.G.S. § 15A-1054.

**Am Jur 2d, Criminal Law § 774.**

### 3. Criminal Law § 217 (NCI4th) — Speedy Trial Act — discovery motion — time tolled — trial after discovery completed

Defendant's right to a speedy trial under the Speedy Trial Act was not violated where defendant made a motion for discovery before the indictment was returned, the period between the return of the indictment and the completion of discovery should be excluded from the speedy trial period, and the trial began within 120 days after discovery was completed.

**Am Jur 2d, Criminal Law §§ 662, 854, 855.**

STATE v. WILLIS

[332 N.C. 151 (1992)]

4. **Constitutional Law § 327 (NCI4th) — speedy trial — constitutional right — delay during discovery**

Defendant's Sixth Amendment right to a speedy trial was not violated where discovery was not completed until August 1987 and the trial commenced in September 1987, and there was no evidence that the delay was oppressive to defendant or that he was prejudiced by the delay.

**Am Jur 2d, Criminal Law §§ 652-659.**

5. **Jury § 7.11 (NCI3d) — death penalty views — excusal for cause — no opportunity for rehabilitation**

The trial court did not err in excusing for cause two prospective jurors who stated unequivocally that they could under no circumstances vote for the death penalty and in refusing to permit defense counsel to attempt to rehabilitate the two jurors by asking whether they could apply the law as given to them by the judge where there was nothing in the record to indicate that either of the two excused jurors would have given different answers if questioned further.

**Am Jur 2d, Jury §§ 195-212.**

6. **Jury § 7.9 (NCI3d) — prospective juror — bias in favor of defendant — challenge for cause — no opportunity for rehabilitation**

When a prospective juror stated that because he knew the defendant "so well" the State would have to satisfy him beyond a shadow of a doubt before he would vote to find defendant guilty and that he knew the difference between beyond a shadow of a doubt and beyond a reasonable doubt, the trial court did not err in refusing to permit defense counsel to ask the juror whether he could apply the law as given to him by the court before it allowed the State's challenge for cause of the juror.

**Am Jur 2d, Jury §§ 195-212.**

7. **Jury § 6.4 (NCI3d) — prospective juror — death penalty views — question disallowed — no error**

The trial court did not err in sustaining the State's objection to defense counsel's question to a prospective juror as to how she felt "about a life sentence as opposed to a death sentence in a case where a person is convicted of first degree

murder" where the juror had previously stated that she was not opposed to the death penalty but did not think it was necessarily appropriate in every case in which a defendant was convicted of first degree murder.

**Am Jur 2d, Jury §§ 195-212.**

8. **Evidence and Witnesses § 1134 (NCI4th)— statements by nontestifying codefendant—implied admissions by defendant— Bruton rule inapplicable**

The trial court properly admitted testimony by one witness as to what the nontestifying codefendant said in defendant's presence about plans to divide a murder victim's jewelry and money after he was killed and testimony by a second witness that the codefendant stated in defendant's presence that defendant had a chance to get the victim when the victim was beating her and not to worry about a friend's talking because the friend was "cool," since these statements were admissible against defendant as implied admissions and were not barred by the rule of *Bruton v. United States*, 391 U.S. 123.

**Am Jur 2d, Evidence §§ 610, 638, 639.**

9. **Evidence and Witnesses § 1150 (NCI4th)— prima facie case of conspiracy—admissibility of declarations by defendant**

Where the State established a prima facie case of a conspiracy between defendant and the codefendant to murder the victim, the trial court properly admitted testimony by one witness that he heard defendant say, "You do your part and . . . I'll take care of the rest" and testimony by a second witness that, after the codefendant complained when the first attempt to kill the victim was aborted, defendant said, "Don't worry, Baby, it will get done," since these statements by defendant were admissible as declarations made in furtherance of the conspiracy.

**Am Jur 2d, Evidence § 642.**

**Admissibility as against conspirator of extrajudicial declarations of coconspirator—Supreme Court cases. 1 L. Ed. 2d 1780.**

10. **Evidence and Witnesses § 391 (NCI4th)— other bad acts— propensity to commit crime—harmless error**

The trial court in a first degree murder case erred in the admission of testimony that a witness on one occasion

STATE v. WILLIS

[332 N.C. 151 (1992)]

went with defendant to the courthouse in Lumberton to answer a charge of breaking or entering and that on another occasion he went with defendant to engage in a fight since this testimony was not relevant to any issue in the case except to show that defendant had a propensity for bad acts and acted in conformity therewith in killing the victim. However, this error was harmless in light of the strong substantive evidence against defendant as well as other evidence of defendant's bad acts, including the ingestion of illegal drugs.

**Am Jur 2d, Evidence §§ 339, 340, 366.**

**11. Evidence and Witnesses § 787 (NCI4th) — exclusion of evidence — similar testimony by same witness**

Any error in the trial court's sustention of the State's objection to a question as to whether the witness had been told by officers that it was defendant they wanted was cured when the witness later answered the same question.

**Am Jur 2d, Witnesses §§ 858-861.**

**12. Evidence and Witnesses § 2873 (NCI4th) — cross-examination — exclusion of repetitious question**

The trial court did not abuse its discretion in sustaining the State's objection to a repetitious question asked by defense counsel on cross-examination of a State's witness.

**Am Jur 2d, Witnesses §§ 858-861.**

**13. Criminal Law § 465 (NCI4th) — jury argument — inference of malice**

The district attorney's jury argument that "the law . . . says that malice is merely the doing of a wrongful act without just cause or excuse, and when a person dies at the business end of a deadly weapon you, the jury, may infer that" was not an incorrect statement of the law.

**Am Jur 2d, Trial §§ 640, 641, 643.**

**Counsel's right in criminal prosecution to argue law or to read law books to the jury. 67 ALR2d 245.**

**14. Criminal Law § 466 (NCI4th) — jury argument — defense tactic — no comment on counsel's credibility**

The district attorney's jury argument about defendant's tactic of shifting the blame for a killing to his codefendants

STATE v. WILLIS

[332 N.C. 151 (1992)]

was not an improper comment on defense counsel's credibility and effective assistance and was not error.

**Am Jur 2d, Trial §§ 683, 684.**

**Propriety and effect of attack on opposing counsel during trial of a criminal case. 99 ALR2d 508.**

15. **Criminal Law § 439 (NCI4th) — jury argument — type of witnesses available — no improper characterization of defendant**
    The district attorney's statement in his jury argument that "when you try the devil, you have to go to hell to find your witnesses" was not an improper characterization of defendant as the devil but was merely an illustration of the type of witnesses available in this case.

    **Am Jur 2d, Trial §§ 681, 682.**

    **Negative characterization or description of defendant by prosecutor during summation of criminal trial, as ground for reversal, new trial, or mistrial — modern cases. 88 ALR4th 8.**

16. **Criminal Law § 445 (NCI4th) — State's handling of evidence — propriety of jury argument**
    The district attorney's jury argument about the State's handling of the evidence was not an improper expression of opinion on the evidence but was a proper argument that the State had been careful in preserving the evidence and the jury should believe it.

    **Am Jur 2d, Trial §§ 632, 634-637.**

17. **Criminal Law § 463 (NCI4th) — jury argument — comment supported by evidence**
    The district attorney's jury argument in a first degree murder case that "the only practical one in the whole bunch seems to be the little sixteen year old girl . . . who says — '[w]e will never get the blood out of the cracks [of the floor]'" was supported by the evidence, although the girl did not testify, where there was testimony that the girl made this statement during a discussion about how the victim should be killed when it was suggested that defendant kill the victim while he was sitting on a sofa in the codefendant's living room.

    **Am Jur 2d, Trial § 632.**

STATE v. WILLIS

[332 N.C. 151 (1992)]

18. **Criminal Law § 741 (NCI4th) — instructions — codefendant acting in concert — no expression of opinion on defendant's guilt**

The trial court's instruction in a first degree murder case that, in order to find the codefendant guilty of murder by lying in wait, the State must prove, *inter alia*, that the codefendant acted in concert with defendant "who lay in wait for [the victim]" and that the codefendant was acting in concert with defendant "who intentionally assaulted [the victim]" did not constitute an expression of opinion on the evidence that defendant was guilty.

**Am Jur 2d, Trial §§ 1191, 1204.**

19. **Criminal Law § 480 (NCI4th) — juror contact by family member — sufficiency of inquiry by court**

The trial court did not commit prejudicial error in failing to make further inquiry when the court asked a juror whether a family member of one of the parties had talked to him and the juror said that no family member had done so where defendant did not request any further inquiry or make a motion for a mistrial pursuant to N.C.G.S. § 15A-1061.

**Am Jur 2d, Trial §§ 1637-1639.**

20. **Constitutional Law § 342 (NCI4th) — trial court's communication with juror — absence of defendant — harmless error**

The trial judge erred in communicating with a juror out of the presence of defendant and her attorneys when he inquired of a juror whether a family member of one of the parties had spoken to him and the juror said that no family member had done so. However, this error was harmless where the trial judge placed in the record information about this inquiry and this error could not have contributed to the result of the trial.

**Am Jur 2d, Criminal Law §§ 692-695, 908, 909, 914.**

21. **Constitutional Law § 342 (NCI4th) — capital trial — absence of defendant from courtroom — questions to prospective jurors — identification of photographs — no prejudicial error**

A defendant on trial for first degree murder was not prejudiced when the prosecutor examined three prospective jurors while defendant and one of her attorneys were absent from the courtroom where the questions asked by the prosecutor dealt with residences, occupations, church memberships,

reading habits and preferred television programs, and the prosecutor did not excuse any juror while defendant was absent from the courtroom. Nor was defendant prejudiced when a pathologist identified photographs of the victim's body while defendant was absent from the courtroom.

**Am Jur 2d, Criminal Law §§ 692-695, 908, 913.**

**Validity of jury selection as affected by accused's absence from conducting of procedures for selection and impaneling a final jury panel for specific cases. 33 ALR4th 429.**

22. **Constitutional Law § 342 (NCI4th)— capital trial—absence of defendant during testimony—harmless error**

Any error by the trial court in permitting the defendant in a capital case to be absent from the courtroom while a detective was reading a statement made by another prosecution witness was harmless beyond a reasonable doubt where defendant became visibly upset during the detective's testimony and asked permission to leave the courtroom; the trial court informed defendant that she had a right to be present and that the trial would continue if her request to leave was honored; and the statement read by the detective did not implicate defendant.

**Am Jur 2d, Criminal Law §§ 698, 699, 930, 934.**

23. **Homicide § 374 (NCI4th)— first degree murder—actual or constructive presence—acting in concert—sufficiency of evidence**

The evidence was sufficient for the jury to find that defendant was actually or constructively present when a killing occurred so as to support the trial court's submission to the jury of a charge of first degree murder on the theory that defendant was acting in concert with the codefendant, although defendant contends she was at least sixty-five feet away and inside the fence which enclosed her yard when the victim was killed outside the fence, where the evidence showed that defendant was able to see the attack on the victim and was close enough for the victim to call to her for help, and that defendant went into the house when the victim called to her. Furthermore, the evidence was sufficient for the jury to find that defendant acted in concert with the codefendant at the time of the killing, although she testified that she discovered the victim did not have any money with him the night he

STATE v. THOMPSON

[332 N.C. 204 (1992)]

was killed and tried to signal the codefendant not to kill the victim on that date, when evidence tending to show that defendant had agreed with the codefendant and others that the victim would be killed is considered with the evidence that she was actually or constructively present when the killing occurred, ready to lend whatever aid was necessary.

**Am Jur 2d, Homicide §§ 28, 29.**

24. **Homicide § 372 (NCI4th) — first degree murder — submission of accessory before fact not required**

The trial court in a first degree murder case did not err in failing to submit to the jury the lesser included offense of accessory before the fact of first degree murder where all the evidence showed that defendant was on the front porch of her house within sight of the killing when the victim was attacked at the end of her driveway and that she was thus constructively present at the time the victim was killed.

**Am Jur 2d, Homicide §§ 28, 535; Trial §§ 1255, 1256.**

**Lesser-related state offense instructions: modern status. 50 ALR4th 1081.**

25. **Criminal Law § 751 (NCI4th) — acting in concert — instruction on burden of proof — no plain error when considered in context**

Although the trial court's instruction in a first degree murder case that "the burden of proof which the State must meet to obtain a conviction under the principle of acting in concert is less than its burden to prove that a defendant actually committed every element of the offense charged" was erroneous standing alone, the jury was not misled thereby and the instruction was not plain error where the context of this statement makes it clear that the court was referring to not having to prove that defendant did all the things which constitute the elements of murder; this language did not mean that the State did not have to prove the elements involving defendant beyond a reasonable doubt; and the court correctly instructed the jury as to the State's burden of proof in the case involving defendant at several other places in the charge.

**Am Jur 2d, Trial §§ 1291, 1292.**

**Supreme Court's views as to prejudicial effect in criminal case of erroneous instructions to jury involving burden of proof or presumptions. 92 L. Ed. 2d 862.**

**26. Criminal Law § 793 (NCI4th) — acting in concert — constructive presence — sufficiency of instructions**

The trial court's acting in concert instructions did not permit the jury to find that defendant was constructively present even though the jury did not find that she intended to aid or encourage the actual perpetrator of a murder, that she did not convey that intent to the perpetrator, and that the perpetrator was not aware of that intent, but the instructions properly informed the jury that defendant was constructively present if the jury found that she shared the criminal intent with the perpetrator and the perpetrator knew this and that the perpetrator knew either that defendant was aiding or encouraging him or was in a position to aid or encourage him when the killing occurred.

**Am Jur 2d, Trial §§ 1120, 1121, 1241, 1244-1256.**

**27. Criminal Law § 460 (NCI4th) — jury argument — reasonable inference from evidence**

The prosecutor's jury argument that defendant's blowing of her car horn when she met a codefendant's car on the day the victim was killed was not an attempt to stop the killing as defendant testified but was a signal to the occupants of the codefendant's car to proceed with the killing was a reasonable inference from the evidence and was not improper.

**Am Jur 2d, Trial §§ 632, 634.**

**28. Jury § 6.4 (NCI3d) — jury selection — statement that death penalty is crux or central issue**

The district attorney's repeated statement to prospective jurors that the death penalty was the "crux" or "central issue" in jury selection in a capital case did not convey to the jurors the impression that defendant's guilt was foreordained and was not improper.

**Am Jur 2d, Trial § 499.**

**29. Jury § 6.4 (NCI3d) — death penalty views — request for unequivocal answers**

The district attorney's request that prospective jurors give unequivocal answers to questions about their death penalty views was not error, it being mere speculation that these statements forced the jurors into pigeonholes and made those

STATE v. WILLIS

[332 N.C. 151 (1992)]

who favored the death penalty more likely to vote to impose the death penalty.

**Am Jur 2d, Jury §§ 201, 202, 289, 290.**

**30. Jury § 6.4 (NCI3d) — death penalty — jury selection — questions by prosecutor — necessity for death penalty — jurors' roles not minimized**

The district attorney's question as to whether prospective jurors thought the death penalty was "necessary" did not convey to the jury the impression that the death penalty is a deterrent to crime and was not improper. Furthermore, the district attorney did not minimize the importance of the jurors' roles in imposing the death penalty by asking if they could be a part of the machinery that brought it about.

**Am Jur 2d, Jury §§ 201, 202, 289, 290.**

**31. Jury § 6.3 (NCI3d) — jury selection — guilt of both defendants — improper question — error cured by charge**

The district attorney's question asking prospective jurors whether, if the State satisfied them beyond a reasonable doubt that "one or both of the defendants is guilty of murder in the first degree," they could vote to find "them" guilty was improper. However, this error was cured by the trial court's charge that the jury would have to be satisfied beyond a reasonable doubt as to each defendant before it could find that defendant guilty.

**Am Jur 2d, Jury §§ 201-203, 212.**

**32. Criminal Law § 1352 (NCI4th) — McKoy error — new sentencing hearing**

Two defendants sentenced to death for first degree murder are entitled to a new sentencing hearing because of *McKoy* error in the court's instructions requiring unanimity for mitigating circumstances.

**Am Jur 2d, Criminal Law § 600.**

**Unanimity as to punishment in criminal case where jury can recommend lesser penalty. 1 ALR3d 1461.**

Justice LAKE did not participate in the consideration or decision of this case.

APPEALS as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing death penalties entered by *Barnette, J.*, at the 28 September 1987 Criminal Session of Superior Court, ROBESON County, upon jury verdicts finding defendants guilty of first degree murder. Heard in the Supreme Court 13 December 1990.

Each of the defendants was charged with the first degree murder of Jerry Richardson. These cases were consolidated for trial. Evidence introduced at the trial showed that for approximately four years prior to 12 July 1986, the defendant, Donna Sue Cox, lived in a house in Parkton, North Carolina, provided for her by Jerry Richardson. Mr. Richardson also furnished Ms. Cox with a telephone, an automobile and credit cards.

The defendant Willis met Donna Sue Cox in January 1986 and Willis began coming to Cox's house when Richardson was not present. In early July of 1986, the defendants, with other accomplices, formed a plan to kill Jerry Richardson. On the night of 9 July 1986 Willis, Tony Owens, and Roy Grooms waited outside the house in which Cox was living for the purpose of killing Jerry Richardson, who was in the house with Cox. The plan to kill Mr. Richardson that night was aborted when Mr. Richardson came out of the house and drove away before the three men could get close enough to kill him.

On the night of 12 July 1986 Willis and Owens waited outside the house until Jerry Richardson left it at approximately 12:00 midnight. Cox came out with Mr. Richardson and stood on the porch as he drove down the driveway. Mr. Richardson left his automobile and opened the gate. He then drove through the gate and left his automobile to close the gate. At this time, Willis, who had been hiding in the bushes, attacked Mr. Richardson and beat him to death with a crowbar. When Willis started to attack him, Mr. Richardson called Cox who was on the front porch of the house. She turned and walked into the house.

The jury found both defendants guilty and recommended they be put to death. From a sentence imposing the death penalty in both cases, the defendants appealed to this Court.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton, Assistant Attorney General, and Joan H. Byers, Special Deputy Attorney General, for the State.*

*William L. Davis, III and Donald W. Bullard for defendant-appellant James Earl Willis.*

STATE v. WILLIS

[332 N.C. 151 (1992)]

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, Benjamin S. Sendor, Special Assistant to the Director, North Carolina Death Penalty Resource Center, for defendant-appellant Donna Sue Cox.*

WEBB, Justice.

[1] The defendant Willis' first assignment of error deals with a pre-trial motion. Willis made a motion to prohibit the State from exercising peremptory challenges to jurors "based on group bias." The defendant contended he was an Indian which made him a member of a cognizable racial group and entitled him to object to peremptory challenges to jurors on racial grounds under *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986).

A hearing was held on Willis' motion. He testified that his father was white and his mother was an Indian. His birth certificate showed he was white. His driver's license and school records also showed him to be white but he testified these notations were taken from his birth certificate.

At the end of the hearing, the court made the following finding, "[t]his motion is probably premature at this time . . . I will just make this ruling. I cannot find that the defendant is a member of a cognizable racial minority[.]" The court denied Willis' motion.

The defendant Willis says that there was error in the conduct of the voir dire hearing because the court sustained the objections of the State to his testimony in regard to the race with which he principally associated, of which race he considered himself to be, and some of the forms and applications he had filed which showed his race.

Assuming it was error to sustain the objections to this testimony by defendant Willis and that it was error for the court to hold that it could not find Willis was a member of a cognizable minority, we cannot hold this was prejudicial error. The State exercised nine peremptory challenges to which Willis objected. The record does not show the race of the juror as to any of these challenges. An appellant must make a record which shows the race of a challenged juror in order to show purposeful discrimination. *State v. Mitchell*, 321 N.C. 650, 365 S.E.2d 554 (1988). No such showing has been made in this case. No prejudicial error can be shown for rulings at the hearings on the motion to bar the exercise of

peremptory challenges on racial grounds. This assignment of error is overruled.

[2] The defendant Willis next assigns error to the denial of his motion to compel the State to disclose any plea bargains made by any of his co-defendants or accomplices. N.C.G.S. § 15A-1054(c) and the Fourteenth Amendment to the Constitution of the United States require that any plea bargain with a person who is to testify against a defendant be disclosed to the defendant. *Giglio v. United States*, 405 U.S. 150, 31 L. Ed. 2d 104 (1972).

In this case there is nothing in the record to indicate that a plea bargain had been made by any witness against the defendants. Each of the co-defendants and accomplices who testified said he had not entered into a plea bargain. It was not error to deny this motion because there was no showing of a plea bargain. This assignment of error is overruled.

[3] The defendant Willis assigns error to the denial of his motion to dismiss the charge against him for a violation of his right to a speedy trial under the Speedy Trial Act, N.C.G.S. § 15A-701, and a violation of his right to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution of the United States. The Speedy Trial Act applies to this case although it was repealed after the case was tried. *See State v. Coker*, 325 N.C. 686, 386 S.E.2d 196 (1989). The Speedy Trial Act required that the defendant be tried within 120 days of the date the defendant was arrested, served with criminal process, waived indictment or was indicted, whichever occurred last, unless that time was extended by certain specified events. Among those events is the delay from the time a pretrial motion was made until a judge made a final ruling on the motion. *See State v. Kivett*, 321 N.C. 404, 364 S.E.2d 404 (1988).

In this case, the record shows the defendant made a motion for discovery on 27 August 1986, which was prior to the date the bill of indictment was returned on 29 September 1986. The motion was not heard until 2 September 1987. At that time, the defendant's counsel informed the court that discovery had been completed three or four weeks earlier. We held in *State v. Marlow*, 310 N.C. 507, 313 S.E.2d 532 (1984), that when a motion, which tolls the running of the time under the Speedy Trial Act, is made before the bill of indictment is returned, the excluded time begins when the indictment is returned. In this case, the excluded period began on 29 September 1986 and ran at least until discovery was

STATE v. WILLIS

[332 N.C. 151 (1992)]

completed which was three or four weeks before 2 September 1987. The trial commenced on 28 September 1987 which was within the 120 day period as required by the Speedy Trial Act.

[4]   We also hold that the defendant Willis' right to a speedy trial under the Sixth and Fourteenth Amendments to the Constitution of the United States was not violated. In determining whether a delay in a trial violates the Sixth Amendment, interrelated factors which must be examined are: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice resulting from the delay. *State v. McKoy*, 294 N.C. 134, 240 S.E.2d 383 (1978); *State v. Smith*, 289 N.C. 143, 221 S.E.2d 247 (1976); *State v. Jackson*, 287 N.C. 470, 215 S.E.2d 123 (1975). The length of the delay is not by itself the determining factor. In this case, the record shows discovery was not complete until August 1987 and the trial was commenced in September. There is not an intimation that the delay was oppressive to the defendant or that he was prejudiced by the delay. His Sixth Amendment right to a speedy trial was not violated. This assignment of error is overruled.

[5]   In his next assignment of error, the defendant Willis contends he was unduly restricted in his voir dire examination of the jury. Two of the prospective jurors stated unequivocally that they could under no circumstances vote for the death penalty. The defendant's attorney then attempted to rehabilitate these two jurors by asking whether they could apply the law as given to them by the judge. The court sustained objections to these questions and allowed the State's challenge for cause to the two prospective jurors. There is nothing in the record to indicate that either of the two excused jurors could have given different answers if questioned further as to their inabilities to vote for the death penalty. The court did not abuse its discretion when it sustained the objections to further questioning and allowed the challenges for cause. *State v. McNeil*, 324 N.C. 33, 375 S.E.2d 909 (1989), *sentence vacated*, 494 U.S. 1050, 108 L. Ed. 2d 756, *on remand*, 327 N.C. 388, 395 S.E.2d 106 (1990).

[6]   One of the prospective jurors stated that because he knew the defendant Willis "so well" the State would have to satisfy him beyond a shadow of a doubt before he would vote to find Willis guilty. He said he knew the difference between beyond a shadow of a doubt and beyond a reasonable doubt which is that

"one [was] less than the other." The court then sustained an objection to a question by Willis' attorney as to whether the juror could apply the law as given to him by the court and allowed the State's challenge for cause. In this we find no error. It was not an abuse of discretion for the court to stop the questioning of this juror and excuse him after he had answered as he did. *State v. Reese*, 319 N.C. 110, 353 S.E.2d 352 (1987).

[7] Finally, defendant Willis says it was error to sustain an objection to the question, "[h]ow do you feel about a life sentence as opposed to a death sentence in a case where a person is convicted of first degree murder?" The juror had previously stated that she was not opposed to the death penalty, but she did not think the death penalty was necessarily appropriate in every case in which a defendant was convicted of first degree murder. In light of this answer, the defendant should have been able to get what information he needed although the objection was sustained to his later question. This assignment of error is overruled.

In his next assignment of error, defendant Willis argues that two witnesses were allowed to testify as to statements that nontestifying persons made to them which incriminated him in violation of the rule of *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476 (1968).

Tony Owens testified for the State that approximately one week before Jerry Richardson was killed, he was at a motel in Kure Beach. The defendant Willis was with him, as was Michael Johnson and the defendant Cox. Cox told the three men they would have to leave because Jerry Richardson was coming. They left and went to a motel in Wilmington. Mr. Owens testified that he, the defendant Willis and a woman named Tracie Phillips returned to the motel in Kure Beach. The defendant Cox was there and the four of them made plans to kill Jerry Richardson. While they were out of the presence of the defendant Willis, Cox asked Owens if he thought Willis loved her and what would Willis think if she were pregnant. Owens told Cox he thought Willis loved her and would be happy if she were pregnant. Owens testified further that he and Cox then went into a room at the motel with Willis and Tracie Phillips and the four of them discussed how they would divide Mr. Richardson's jewelry after they had killed him. Cox said she wanted his most expensive ring and one other ring. The four of them also talked about what they would do with the money

they expected Mr. Richardson would be carrying. They planned to use it to deal in drugs. Cox said, "[t]here's good money in cocaine."

Owens also testified that the four of them left Kure Beach and went to Cox's home in Robeson County where she told them that Richardson would call her that day and would be upset because she would not be at home. The four of them then went to a field where they drank vodka and smoked marijuana. While they were in the field Cox said, "[w]hat are we going to do about Jerry tomorrow night?" Willis replied, "[y]ou do your part and get him drunk and I'll take care of the rest."

Roy Grooms, who was a co-defendant, testified for the State that he had agreed with the defendant Willis to help him kill Jerry Richardson. During his testimony, he said he was with Cox and Willis on one occasion when Cox said Mr. Richardson had beaten her. He testified that Willis said, "[j]ust wait, I'll kick his God damn ass[,]" to which Cox replied, "[y]ou had a chance to do that while he had me on the bed, choking me." Grooms also testified that Cox told him that Mr. Richardson "has it fixed" so that in the event he was killed in a wreck "or something" that she would have the house she was living in and a certain sum of money.

Grooms testified further that on one occasion when he was in the company of Willis and Cox when Willis asked Cox whether Mr. Richardson was coming back to the house and she replied that Mr. Richardson was supposed to call her and let her know whether he would meet her at the house or in Fayetteville. Grooms testified that on another occasion Cox was talking on the telephone and when she finished Willis said, "[w]hat are you doing, telling her our business?" to which Cox relied, "[m]an, she's cool. She ain't going to say anything."

Grooms also testified that after the first aborted attempt to kill Mr. Richardson he entered Cox's home with Willis and Cox said, "[m]an, after [I] got him drunk and thinking something was going to happen, and you all don't do nothing," to which Willis replied, "[d]on't worry, Baby, it will get done." Finally, Grooms testified that on one occasion he saw Tracie Phillips who told him Mr. Richardson had put her out of Cox's house because he had caught Willis and Tony Owens at the house.

## STATE v. WILLIS

[332 N.C. 151 (1992)]

*Bruton* holds that it is a violation of a defendant's rights under the Sixth Amendment of the Constitution of the United States to introduce into evidence a confession of a nontestifying co-defendant which implicates the defendant. The defendant contends that the testimony we have recited violates this rule. The holding of *Bruton* is based on the right of a litigant to confront the witnesses against him. Consequently, if testimony is admitted under the hearsay rule, or as an exception to it, there is no right of confrontation and *Bruton* does not prohibit the use of such testimony. *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828 (1977). It is with these principles in mind that we examine this assignment of error.

Some of the testimony to which the defendant Willis takes exception does not implicate him. The testimony of Owens that Cox told Willis, Michael Johnson and Owens they would have to leave the motel because Mr. Richardson was coming to the motel does not implicate defendant Willis in the killing of Mr. Richardson. Neither does the testimony of Owens that Cox asked him whether he thought Willis loved her and whether Willis would be happy if she were pregnant, nor does his testimony that Cox said Mr. Richardson would be upset if she was not at home implicate the defendant Willis. The testimony of Owens that Cox told him she was to have the house and a certain sum of money if Richardson was killed did not implicate Willis. Owens' testimony that Cox told Willis Mr. Richardson would call to tell her whether to meet him at the house or in Fayetteville and his testimony that Tracie Phillips told him Mr. Richardson had put her out of the house did not implicate Willis. This testimony was not barred by *Bruton*.

[8] In *State v. Hardy*, 293 N.C. 105, 235 S.E.2d 828, we held that when a statement is made in a person's presence in such circumstances that the person would be naturally expected to deny it if it were not true, the statement is admissible as an implied admission and is not barred by *Bruton*. Under this rule, the testimony of Mr. Owens was admissible as to what Cox said in the presence of Willis in regard to dividing the jewelry and money after Mr. Richardson had been killed. Under the rule, the testimony of Grooms was admissible that Cox said in the presence of Willis that Willis had had a chance to get Richardson when Richardson was beating her and not to worry about a friend's talking because the friend was "cool." Defendant Willis invited these statements and did not deny them when they were made.

STATE v. WILLIS

[332 N.C. 151 (1992)]

[9] If the State establishes a prima facie case of a conspiracy to commit a crime independently of the declarations sought to be admitted, a statement by a co-conspirator during the course and in furtherance of the conspiracy is admissible and not barred by *Bruton*. *State v. Nichols*, 321 N.C. 616, 365 S.E.2d 561 (1988). N.C.G.S. § 8C-1, Rule 801(d)(e) (1988). In this case, there was ample evidence, independent of the statements to which Willis now takes exception, of an agreement between Cox and Willis to kill Mr. Richardson. The testimony of Owens that he heard Willis say, "[y]ou do your part and . . . I'll take care of the rest[,]" as well as the testimony by Grooms that after Cox had complained when the first attempt at killing Mr. Richardson had aborted that Willis said, "[d]on't worry, Baby, it will get done[,]" were admissible under this rule. This assignment of error is overruled.

[10] The defendant Willis next assigns error to the admission of testimony by Tony Owens that on one occasion he left Cox's home with Willis and went to the courthouse in Lumberton to answer a charge of breaking or entering and on another occasion he went with Willis to engage in a fight. This testimony was not relevant to any issue in this case except the defendant Willis' character to show that he had a propensity for bad acts and acted in conformity therewith in killing Mr. Richardson. It should not have been admitted. *State v. Cashwell*, 322 N.C. 574, 369 S.E.2d 566 (1988). N.C.G.S. § 8C-1, Rule 404(b) (1988). Although it was error to admit this testimony, we hold it was harmless. In light of the strong substantive evidence against the defendant Willis, as well as other evidence of bad acts including the ingestion of illegal drugs, we cannot hold that the result would have been different had this testimony been excluded. *State v. Milby*, 302 N.C. 137, 273 S.E.2d 716 (1981); N.C.G.S. § 15A-1443 (1988). This assignment of error is overruled.

[11] The defendant Willis next assigns error to what he contends was an unconstitutional restriction on his right to cross-examine three witnesses. When Tony Owens was testifying, Willis' attorney asked him if the officers had told him during the investigation that it was Willis they wanted. The court sustained the State's objection to this question and Willis says this is error. Later in the cross-examination, the following colloquy occurred:

STATE v. WILLIS

[332 N.C. 151 (1992)]

Q. You have been told that it's James Willis we want on this case and not you, not Roy Grooms; haven't you been told that, sir?

A. I was told they wanted to try the person who killed the man.

Q. Answer my question if you would, sir. Weren't you told by someone that this is the man we want? We don't want you, we want him.

A. That is correct.

Any error there may have been in sustaining the objection to this question on cross-examination was cured when the witness later answered the same question. *State v. Matthews*, 299 N.C. 284, 261 S.E.2d 872 (1980).

[12] When Roy Grooms was testifying, the following colloquy occurred on cross-examination:

Q. Mr. Grooms, are you guilty of murder in the first degree of Jerry Richardson?

A. I'm guilty of something. I was there on the Wednesday night. I helped dispose of the body, but I did not kill Jerry Richardson, and I was not there when he was killed.

Q. Then I ask you again, sir: Are you guilty of—

MR. BRITT: Object. He just answered it.

THE COURT: Sustained.

This defendant Willis contends it was error to sustain the objection to this question. The question was repetitious. It was within the discretion of the judge to put this restriction on the cross-examination of Grooms. *State v. Satterfield*, 300 N.C. 621, 268 S.E.2d 510 (1980).

Steven Barnhill, who was charged as accessory after the fact to the murder, testified for the State. On cross-examination, the following colloquy occurred:

Q. So no one forced you to participate in any events on July 12, 1986; did they?

A. Well, I was scared.

Q. You were scared?

STATE v. WILLIS

[332 N.C. 151 (1992)]

A. Yes, sir.

Q. Now, — well, did you tell your lawyer you were scared?

A. Yes, sir.

Q. Did your lawyer tell you that maybe [sic] a defense?

MR. BRITT: Object to that, now.

THE COURT: Sustained.

MR. BRITT: Move to strike.

THE COURT: Motion to strike allowed.

The defendant has not said how he was prejudiced by the sustaining of this objection and we can see no prejudice by it. This assignment of error is overruled.

[13] The defendant Willis next assigns error to the argument of the district attorney to the jury. At one point the district attorney argued, "the law looks at it in an enlarged sort of view and says that malice is merely the doing of a wrongful act without just cause or excuse, and when a person dies at the business end of a deadly weapon you, the jury, may infer that." The defendant Willis says this is a misstatement of the law. This argument is not an incorrect statement of the law. State v. Reynolds, 307 N.C. 184, 297 S.E.2d 532 (1982).

[14] The defendant Willis contends it was error for the district attorney to argue as follows:

I wanted to go through that because I didn't want you to get back there in that jury room and get misguided in your deliberations.

. . . .

Now there's a legal tactic in this lawsuit. . . .

And, indeed, you have seen one here, Ladies and Gentlemen of the Jury, as old as men have been arguing and women have been arguing before bars of justice, and it goes something like this — it's a good technique for defending a murder case: Put somebody else on trial if you can.

Have you sensed a little bit of that in the cross examination here, Ladies and Gentlemen of the Jury?

STATE v. WILLIS

[332 N.C. 151 (1992)]

The defendant Willis says this argument bore "directly on the credibility and the effective assistance of defendant's counsel." It appears from the record that one tactic of Willis was to shift the blame for the killing to his co-defendants. The district attorney could properly comment on this tactic.

[15]  At one point the district attorney argued, "when you try the devil, you have to go to hell to find your witnesses." Defendant Willis says it was prejudicial error to characterize him as the devil. We do not believe the district attorney was characterizing Willis as the devil. He used this phrase to illustrate the type of witnesses which were available in a case such as this one.

[16]  At one point the district attorney argued as follows:

Did you notice how the State was so careful in handling the evidence to show you, even though it got very boring from time to time. . . .

Hey, everybody knows that it is boring, but you are entitled to know that that evidence was handled properly and you are entitled to know that the evidence that came into this case is proper evidence taken in this case and properly investigated and properly assessed up in the State Bureau of Investigation Laboratory, and the State has done that for you so that there will be no reasonable doubt of any kind—in this case.

The defendant Willis says this was an improper expression of the district attorney's opinion on the evidence. We believe it is more properly interpreted as an argument that the State had been careful in preserving the evidence and the jury should believe it.

[17]  The district attorney at one point argued, "[t]he only practical one in the whole bunch seems to be the little sixteen year old girl, Tracie [Phillips], who says—'[w]e [will] never get the blood out of the cracks [of the floor].' " The defendant Willis says Tracie Phillips did not testify and there is no evidence in the record to support this argument. There was evidence that while discussing how to kill Mr. Richardson, it was suggested that Willis kill him while he was sitting on a sofa in Cox's living room. Tracie Phillips said that if Mr. Richardson was killed in Cox's home they would never get the blood out of the cracks in the floor. This was evidence in the record which would support this argument. This assignment of error is overruled.

STATE v. WILLIS

[332 N.C. 151 (1992)]

**[18]** The defendant Willis next assigns error to the court's charge, which he says amounted to a comment on the evidence. After correctly charging as to what the State must prove to convict the defendant Willis of murder by lying in wait, the court charged as follows as to Cox:

> So, I charge that for you to find the defendant, Donna Sue Cox, guilty of first degree murder, perpetrated by lying in wait, the State must prove four things beyond a reasonable doubt:
>
> First, that the defendant, Donna Sue Cox, acted in concert with James Earl Willis, who lay in wait for Jerry Richardson, waiting and watching for Jerry Richardson in secret ambush.
>
> And second, that the defendant, Donna Sue Cox, was acting in concert with James Earl Willis who intentionally assaulted Jerry Richardson.
>
> And third, that the defendant, Donna Sue Cox, was actually or constructively present when this occurred.
>
> And fourth, that the act of James Earl Willis was a proximate cause of Jerry Richardson's death.

The defendant Willis says this instruction intimated to the jury that the court felt Willis was guilty. We do not believe this is a proper inference from this instruction. This charge makes it clear that the State must prove beyond a reasonable doubt that Willis lay in wait for Mr. Richardson and assaulted Mr. Richardson proximately causing his death and that Cox acted in concert with Willis while he was doing so. This assignment of error is overruled.

**[19]** The defendant Cox first assigns error to an incident that occurred during the trial. The transcript shows the following occurred:

> THE COURT: Okay. I want the jurors taken to the jury room.
>
> (The following was had outside the presence of the Jury:)
>
> THE COURT: Okay. It has been called to my attention that one of the family members of one of the parties may have talked to one of the jurors. I inquired of the juror whether that in fact took place. The juror denied it.

I don't know whether it took place or not, but nobody is to talk to any juror about anything. If this is violated, the offender could be subject to contempt of Court. I don't want to hear about this again.

All right.

The defendant Cox says that the court's action constituted prejudicial error in two respects. She says first that the court's inquiry was not adequate to resolve the question of whether there had been an improper contact with a juror and second that it was error for the court to talk to a juror when she was not present.

In the event of some contact with a juror it is the duty of the trial judge to determine whether such contact resulted in substantial and irreparable prejudice to the defendant. It is within the discretion of the trial judge as to what inquiry to make. *State v. Rutherford*, 70 N.C. App. 674, 320 S.E.2d 916 (1984), *disc. rev. denied*, 313 N.C. 335, 327 S.E.2d 894 (1985); *State v. Selph*, 33 N.C. App. 157, 234 S.E.2d 453 (1977); *State v. Drake*, 31 N.C. App. 187, 229 S.E.2d 51 (1976). In this case, the judge asked the juror as to whether any contact had been made and was satisfied with the answer. The defendant Cox did not request any further inquiry or make a motion for a mistrial pursuant to N.C.G.S. § 15A-1061. Under these circumstances, we cannot hold it was prejudicial error for the court not to make further inquiry.

[20] As to the court's communicating with a juror out of her presence and out of the presence of her attorneys, this was error. *State v. McCarver*, 329 N.C. 259, 404 S.E.2d 821 (1991); *State v. Smith*, 326 N.C. 792, 392 S.E.2d 362 (1990). The question is whether the State has shown this error was harmless beyond a reasonable doubt. *State v. Allen*, 323 N.C. 208, 372 S.E.2d 855 (1988), *sentence vacated*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand*, 331 N.C. 746, 417 S.E.2d 227 (1992); *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991). We hold that the State has so shown. This case is not like *McCarver* and *Smith*, in which there was no way of telling what happened out of the defendant's presence. The judge put it in the record that he had inquired of a juror whether a family member of one of the parties had spoken to him. The juror said that no family member had done so. There is nothing in the record to show that there was any other communication with a juror. We hold this error could not have contributed to the result

**STATE v. WILLIS**

[332 N.C. 151 (1992)]

of the trial and was harmless beyond a reasonable doubt. This assignment of error is overruled.

[21] The defendant Cox also assigns error to four other occasions in which she said the trial was conducted without her presence. The record shows that on one occasion when the jury was being selected, she and one of her attorneys left the courtroom. During the time she was absent, the district attorney was conducting an examination of the prospective jurors. He asked questions of three different persons. The questions dealt with the residences, occupations, church memberships, reading habits and the preferences of television programs of the three persons. The district attorney did not excuse any jurors while Cox was absent from the courtroom. We do not believe what occurred during her brief absence could have contributed to the result of the trial.

The record shows that on one occasion when a pathologist testifying for the State was identifying photographs of Jerry Richardson's body, Cox was not in the courtroom but returned before the pathologist's testimony was completed. What occurred during this short absence could not have affected the outcome of the trial.

[22] While a detective with the Sheriff's Department was testifying for the State, the court placed the following in the record:

DURING THE TESTIMONY OF DETECTIVE GARTH LOCKLEAR CONCERNING THE STATEMENT OF STEVE BARNHILL, THE DEFEND-ANT DONNA SUE COX BECAME VISIBLY UPSET AND STARTED CRY-ING. HER ATTORNEYS ASKED TO APPROACH THE BENCH—THIS WAS GRANTED. THEY ASKED THAT BECAUSE OF HER UPSET CON-DITION COULD SHE (THE DEFENDANT DONNA SUE COX) BE AL-LOWED TO LEAVE THE COURTROOM UNTIL DETECTIVE LOCKLEAR HAD COMPLETED THE STATEMENT OF STEVE BARNHILL. THE COURT INQUIRED IF SHE UNDERSTOOD THAT SHE HAD A RIGHT TO BE PRESENT AND THEN IF HER REQUEST TO LEAVE WAS HONORED WE WOULD STILL CONTINUE. THEY SAID SHE UNDERSTOOD.

BASED ON THIS, THE COURT ALLOWED HER TO LEAVE THE COURTROOM, WHICH SHE DID. DETECTIVE LOCKLEAR WAS AL-LOWED TO CONTINUE READING THE STATEMENT OF STEVE BARNHILL.

AT THE CONCLUSION OF THAT STATEMENT THE COURT HAD THE DEFENDANT, DONNA SUE COX, RETURNED TO THE COURTROOM[.]

The statement of Steve Barnhill which the detective read into the record did not implicate Cox. It could not reasonably have affected the outcome of the trial. Any error was harmless beyond a reasonable doubt. *See State v. Huff*, 325 N.C. 1, 381 S.E.2d 635 (1989), *sentence vacated*, --- U.S. ---, 111 L. Ed. 2d 777 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991). This assignment of error is overruled.

[23] The defendant Donna Sue Cox assigns error to the court's submission to the jury of the charge of murder on the theory she was acting in concert with Willis at the time of the killing. She says that the evidence shows she was an accessory before the fact. She argues she was not actually or constructively present when the killing took place and that the evidence did not show that she acted together with Willis to kill Mr. Richardson on the night of 12 July 1986. She contends that for these reasons, there was not enough evidence to submit to the jury that she was acting in concert with Willis.

The defendant says that although the record does not show how far she was from where the killing took place, she was at least sixty-five feet away and inside the fence which enclosed her yard. The evidence does show that she was able to see the attack on Mr. Richardson and he was close enough to her to call to her for help. When he called, she went into the house. This is evidence from which the jury could find she was actually present.

If the jury did not find Cox was actually present, the evidence showed she was constructively present. A person is constructively present during the commission of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime. *State v. Price*, 280 N.C. 154, 184 S.E.2d 866 (1971); *State v. Gregory*, 37 N.C. App. 693, 247 S.E.2d 19 (1978). If the jury believed the evidence in this case, it should have found Donna Sue Cox was at least constructively present when the killing occurred.

The defendant Cox also contends the evidence does not show she was acting in concert with Willis at the time the killing occurred on 12 July 1986. She concedes she had agreed with Willis and

others on 6 July 1986 to kill Mr. Richardson. She says she intended that Mr. Richardson be killed on 9 July 1986. When the effort to kill him was aborted on that date, she encouraged Willis and another person to kill Mr. Richardson on 12 July 1986. She says the evidence shows that she discovered Mr. Richardson did not have any money with him on 12 July 1986 and she tried to give a signal to Willis not to kill Mr. Richardson on that date. Although Cox's testimony was that she did not want Mr. Richardson killed on 12 July 1986 because he was not carrying enough money on that date, we hold that the jury could find from all the evidence that Cox had agreed with Willis and some other persons that Mr. Richardson would be killed and she was actually or constructively present when the killing occurred, ready to lend whatever aid was necessary. This would be acting in concert. *State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979). This assignment of error is overruled.

[24] Defendant Cox also assigns error to the failure of the court to submit to the jury as a possible verdict accessory before the fact of murder. N.C.G.S. § 14-5.2 provides:

All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony. However, if a person who heretofore would have been guilty and punishable as an accessory before the fact is convicted of a capital felony, and the jury finds that his conviction was based solely on the uncorroborated testimony of one or more principals, coconspirators, or accessories to the crime, he shall be guilty of a Class B felony.

Defendant Cox contends that there was evidence from which the jury could find she was an accessory before the fact of first degree murder and the evidence against her consisted of the uncorroborated testimony of principals or accessories. If the jury had so found, she would have escaped the death penalty.

An accessory before the fact is one who is absent from the scene when the crime was committed but who participated in the planning or contemplation of the crime in such a way as to "counsel, procure, or command" the principal(s) to commit it. Thus, the primary distinction between a principal in the second degree and an accessory before the fact is that the

latter was not actually or constructively present when the crime was in fact committed.

*State v. Small*, 301 N.C. 407, 413, 272 S.E.2d 128, 132 (1980) (citations omitted). The crime of accessory before the fact to first degree murder is a lesser included offense of first degree murder. *State v. Branch*, 288 N.C. 514, 220 S.E.2d 495 (1975), *cert. denied*, 433 U.S. 907, 53 L. Ed. 2d 1091 (1977). If there is evidence showing the commission of a lesser included offense, the judge must instruct on this offense. If all the evidence shows the commission of the greater offense, the court should not charge on the lesser included offense simply because the jury might not believe. some of the evidence. *State v. Clark*, 324 N.C. 146, 377 S.E.2d 54 (1989).

In this case, all the evidence showed that when the killing occurred, the defendant Cox was on the front porch of her house within sight of the killing, which was done at the end of her driveway. If the jury believed this evidence, it would have to find the defendant Cox was at least constructively present as we have defined it. *See State v. Reese*, 319 N.C. 110, 353 S.E.2d 352; *State v. Ruffin*, 90 N.C. App. 712, 370 S.E.2d 279 (1988); *State v. Hockett*, 69 N.C. App. 495, 317 S.E.2d 416 (1984); *State v. Pryor*, 59 N.C. App. 1, 295 S.E.2d 610 (1982); *State v. Torain*, 20 N.C. App. 69, 200 S.E.2d 665 (1973), *cert. denied*, 284 N.C. 622, 202 S.E.2d 278 (1974). It was not error to decline to submit accessory before the fact as a lesser included offense. This assignment of error is overruled.

[25] The defendant Cox next assigns error to a portion of the charge which she says lessened the State's burden of proof as to her. She did not except at the trial to this portion of the charge, but she contends it was plain error under the standard of *State v. Odom*, 307 N.C. 655, 300 S.E.2d 375 (1983).

At one point the court charged as follows:

In order to obtain a conviction under this principle, the principle of acting in concert, the State need not prove that the defendant, Donna Sue Cox, committed any acts which constitute an element of the crime of first degree murder by lying in wait.

*Thus, the burden of proof which the State must meet to obtain a conviction under the principle of acting in concert*

*is less than its burden to prove that a defendant actually committed every element of the offense charged.* (Emphasis added.)

The defendant Cox correctly says the burden of proof is no less for a person charged for acting in concert than for any other defendant. She says that the error was compounded in this case because the district attorney argued to the jury this incorrect statement of the law. The italicized portion of the charge was taken from our opinion in *State v. Cox*, 303 N.C. 75, 277 S.E.2d 376 (1981).

Although the statement was erroneous standing alone, we do not believe it misled the jury in this case. The statement followed a sentence in which the court correctly charged the jury that to convict the defendant Cox it was not necessary for the State to prove she did all the things which constitute elements of murder. The next sentence began with the word "[t]hus." This connected the italicized sentence with the preceding sentence and we believe made it clear that the "burden of proof" to which the court referred was not having the burden of proving the defendant Cox did certain things. This language did not mean that the State did not have to prove the elements involving the defendant Cox beyond a reasonable doubt. The court correctly instructed the jury as to the State's burden of proof in the case involving Cox at several other places in the charge. This assignment of error is overruled.

[26] The defendant Cox next assigns error to a portion of the charge dealing with constructive presence. The court charged as follows:

> So, even if the State has not satisfied you beyond a reasonable doubt that the defendant, Donna Sue Cox, was actually physically present at the scene when the crime was committed, if the State has satisfied you beyond a reasonable doubt that the defendant, Donna Sue Cox, shared the criminal purpose of James Earl Willis, and to James Earl Willis' knowledge, she was aiding or encouraging him, *or was in [a] position to aid or encourage him at the time the crime was committed,* then this is constructive presence. (Emphasis added.)

The defendant says that constructive presence requires that the defendant intends to help or encourage the commission of the crime, that such intent was conveyed to the one who perpetrates the crime and that the perpetrator believes that the defendant intended to help or encourage him. *State v. Gilmore*, 330 N.C. 167, 409

S.E.2d 888 (1991); *State v. Hunt*, 323 N.C. 407, 373 S.E.2d 400 (1988), *sentence vacated*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand*, 330 N.C. 501, 411 S.E.2d 806 (1992). The defendant Cox says the italicized portion of the charge allowed the jury to find her constructively present although the jury did not find she intended to aid or encourage James Willis or that she conveyed that intent to him, or that he was aware of that intent. We do not agree with this argument. It seems clear to us that the court told the jury that it would have to find that Cox shared the criminal intent with Willis and Willis knew it. The jury was also instructed that it must find Willis either knew that Cox was aiding or encouraging him or was in a position to aid or encourage him when the killing occurred. This would make her constructively present and acting in concert with Willis. *State v. Price*, 280 N.C. 154, 184 S.E.2d 866. This assignment of error is overruled.

[27] The defendant Cox next assigns error to a portion of the district attorney's argument. The evidence showed that in the afternoon before the evening Mr. Richardson was killed, the defendant was driving an automobile followed by Mr. Richardson in his automobile. She was met by an automobile occupied by Willis and Tony Owens. She blew her horn and offered evidence to show she did this as a signal to Willis and Owens that they should not kill Mr. Richardson that night because he was not carrying a sufficient sum of money.

During his argument to the jury, the district attorney argued that when Cox blew her horn, it was not an attempt to stop the killing that night, but rather it was a signal to Willis and Owens to proceed with the killing. Defendant says all the evidence showed the blowing of the horn was to postpone the killing from that night and the district attorney argued something that was contrary to the evidence. *See State v. Britt*, 288 N.C. 699, 220 S.E.2d 283 (1975).

We find no error in this argument by the district attorney. It is undisputed that defendant Cox blew her horn at Willis and Owens as they were approaching her. The district attorney could argue reasonable inferences from the evidence. *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976). Although defendant Cox offered evidence as to her intent when she sounded the horn, the district attorney could argue for a different inference. If defendant Cox was trying to save Mr. Richardson's life that night, she was not trying very hard. It is a reasonable inference that her intent was

as argued by the district attorney. This assignment of error is overruled.

The defendant Cox argues under her next assignment of error that the district attorney, through improper questions asked during the jury selection, erroneously conditioned the jury to return the death penalty. She says the district attorney accomplished this by asking improper questions in five different ways.

The defendant Cox says first that by telling the jurors repeatedly that the death penalty was the "crux" or "central issue" in jury selection, the district attorney conveyed to them the impression that her guilt was foreordained. The second way Cox says the district attorney improperly conditioned the jury is based on a question he asked the jury and his follow up on this question. The district attorney asked each juror a question substantially as follows:

> Mr. Rich, how do you feel about the death penalty, sir, are you opposed to it or you feel like it's a necessary law?

He then told the jurors that in answering the question they should not equivocate, but should answer the questions "yes" or "no" because neither the State nor the defendants could act on the answers if the answers were not clear. The defendant Cox contends that these statements by the prosecution had the effect of forcing the jurors into pigeonholes. She says this is so because by forcing jurors who might have different shades of feeling about the death penalty to give categorical answers, the district attorney drove them away from their true feelings and into polarized positions. Cox says those who answered they were opposed to the death penalty very naturally fell prey to the leading questions equating the opposition to the death penalty as an inability under any circumstances to vote for the death penalty. Cox says those who were placed in the pro-death penalty pigeonhole may well have altered a feeling of only moderate support for the death penalty to strong support for it.

The third way in which defendant Cox says the district attorney improperly prejudiced the jury was by his repeated use of the word "necessary" in his questions in regard to the death penalty. Cox says that was to convey to the jury the message that the death penalty was necessary to deter crime, and this

is not proper to convey to the jury. *State v. Zuniga,* 320 N.C. 233, 357 S.E.2d 898, *cert. denied,* 484 U.S. 959, 98 L. Ed. 2d 384 (1987).

The fourth way in which the defendant Cox contends the district attorney improperly prejudiced the jury was through a question he repeatedly asked the jury in regard to imposing the death penalty. The question was "[d]o you feel that you could be part of the legal machinery which might bring it about in this particular case?" The defendant Cox says this minimized the jury's part in imposing the death penalty by saying it was a part of a machine in violation of *Caldwell v. Mississippi,* 472 U.S. 320, 86 L. Ed. 2d 231 (1985) and *State v. Jones,* 296 N.C. 495, 251 S.E.2d 425 (1979).

The fifth way in which the defendant Cox contends the district attorney improperly prejudiced the jurors was in blurring the distinction between the two defendants. She says that forty-four times the district attorney asked a question substantially as follows:

So I take it you are saying that, first of all, that if the State satisfies you beyond a reasonable doubt that *one or both* of these defendants is guilty of murder in the first degree you could vote to find *them* guilty; is that correct? (Emphasis added.)

The defendant Cox says this question, which was phrased so as to say to the jury that if it was satisfied that one of the defendants was guilty it should find both defendants guilty, was improper and completed the district attorney's plan to turn a process intended for discovery of bias into one for the creation of bias.

In determining the questions raised under this assignment of error, we are not so naive as not to understand that during a jury selection a prosecuting attorney attempts to condition a jury to return a verdict of guilty and, if it is a capital case, to recommend the death penalty. On the other hand, defense attorneys attempt to condition jurors to return a verdict of not guilty and if there is a verdict of guilty in a capital trial, not to recommend the death penalty. A party may question prospective jurors to determine whether a challenge for cause exists and to determine whether to exercise a peremptory challenge. The overall purpose is to select an impartial jury. The regulation of the manner and extent of the inquiry rests largely in the trial court's discretion. *State v. Parks,* 324 N.C. 420, 378 S.E.2d 785 (1989); *State v. Bracey,* 303 N.C. 112, 277 S.E.2d 390 (1981).

[28] We cannot find error in the questions and statements by the district attorney during jury selection. Although the question of the imposition of the death penalty did not arise until after the defendants had been found guilty, it was a very important part of the case and the State had a right to have jurors who could impose it. The State was entitled to let the jury know the imposition of the death penalty was an important part of the case and we cannot say that the use of the words "crux" and "central issue" caused the jury to feel a finding of guilt was foreordained.

[29] Nor can we say that the request by the district attorney to prospective jurors that they give unequivocal answers to questions was error. In determining whether a person should sit as a juror in a capital case, it is helpful for that person to answer questions in a precise manner. It is speculation that these statements forced the jurors into pigeonholes and made those who favored the death penalty more likely to vote to impose the death penalty.

We also cannot say that the question as to whether the jurors thought the death penalty was "necessary" conveyed to the jury the impression that the death penalty is a deterrent to crime. The question does not imply why the death penalty is necessary and the members of the jury might have different reasons for thinking it is necessary. We cannot speculate as to what each juror felt was the reason for the necessity or the lack of necessity for the death penalty.

[30] We also cannot hold that the district attorney minimized the importance of the jurors' roles in imposing the death penalty by asking them if they could be a part of the machinery that brought it about. There are several parts to the process of imposing the death penalty. The jury is one of them. To say that the jury is a part of the process does not minimize the importance of the jury.

[31] As to the district attorney's question asking the jurors whether, if they were convinced one or both was guilty, they would find them guilty, this was an improper question. Obviously, if the jury was satisfied that only one of the defendants was guilty it should find only that one guilty. However, we hold that this is not reversible error. The court correctly charged the jury that it would have to be satisfied beyond a reasonable doubt as to each defendant before it could find that defendant guilty. If the jury was influenced by the nuance in the district attorney's question, such influence was removed by the charge of the court. This case is distinguish-

able from *State v. McCollum*, 321 N.C. 557, 364 S.E.2d 112 (1988), in which we ordered a new trial because the court's charge could have been interpreted as instructing the jury to find both defendants guilty if it was satisfied beyond a reasonable doubt that one of them was guilty. In that case, the court gave an erroneous charge. In this case, the district attorney misstated the law. The court corrected this misstatement. This assignment of error is overruled.

[32] The defendants assign error and the State concedes there was error in the penalty phase of the trial in that the jury was instructed it must unanimously find a mitigating circumstance before it could consider it. *See McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990). For this error, there must be a new sentencing hearing for both defendants.

Each of the defendants has made numerous other assignments of error. They consist of errors which the defendants say were committed during the sentencing hearing and may not recur at a new sentencing hearing, or issues which have been decided contrary to the defendants' contentions and they wish to preserve them. We do not discuss these assignments of error.

For the reasons stated in this opinion, we find no error in the guilt phases of the trials. For errors committed, we order new sentencing hearings for both defendants.

No error in guilt phase; new sentencing hearing.

Justice LAKE did not participate in the consideration or decision of this case.