STATE OF NORTH CAROLINA

v.

BRANDI LEA GRAINGER

No. COA12-444

Filed 31 December 2012

**1. Accomplices and Accessories—instruction erroneously not given—direct or constructive presence**

The trial court erred by not instructing the jury on accessory before the fact to first-degree murder in a prosecution where the evidence indicated that defendant and others planned the killing of her father, she dropped off two men near his house, waited at a K-Mart, and picked them up at a Food Lion after the killing. There was no evidence that defendant was present when the crime was committed, no evidence of the distance from her father's house to the K-Mart or Wal-Mart, and none of the evidence mentioned by the State showed that defendant remained close enough to be able to render assistance if needed.

**2. Accomplices and Accessories—instruction not given—no jury determination of uncorroborated testimony—prejudicial**

The trial court's failure to give an instruction on accessory before the fact in a first-degree murder prosecution was prejudicial because the proper instruction to the jury would have been accompanied by a question to the jury regarding the basis of its verdict, which in turn would have determined whether defendant should have been sentenced to a class A or class B felony. N.C.G.S. § 14-5.2 provides for sentencing for a Class B felony if an accessory before the fact is sentenced for a capital felony and is convicted upon the uncorroborated testimony of principals, coconspirators, or accessories. Defendant was not tried capitally, but first-degree murder is a capital crime because death is a potential punishment, and the language of the statute requires that the jury determine whether the conviction was based solely on the uncorroborated testimony of principals, coconspirators, or accessories.

Appeal by defendant from judgment entered on or about 4 October 2011 by Judge Edgar B. Gregory in Superior Court, Randolph County. Heard in the Court of Appeals 29 November 2012.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Mary Carla Hollis, for the State.*

*Duncan B. McCormick, for defendant-appellant.*

STROUD, Judge.

Defendant appeals judgment convicting her of first degree murder, arguing that the trial court erred in failing to provide the jury with an instruction for accessory before the fact of first degree murder. For the following reasons, we remand for a new trial.

## I. Background

The State's evidence tended to show that in 2008, Mr. Phillip Mabe, Mr. Dylan Boston, defendant's mother, and defendant planned to murder defendant's father. On the day of the murder, defendant picked up Mr. Mabe and Mr. Boston and drove them to her father's home. Mr. Boston brought a gun, and defendant dropped both men off near the home where defendant's father was located and drove away. Defendant later told Detective Ed Blair of the Randolph County Sheriff's Office that she drove to a Kmart after dropping Mr. Mabe and Mr. Boston off near her father's home.[1] Once inside the home, Mr. Mabe shot and killed defendant's father. Mr. Mabe and Mr. Boston then went through a lock box and took a few items to make it appear that a robber had killed defendant's father; they then left in defendant's father's car. Mr. Boston called defendant, and she met them in a Food Lion parking lot a minute or two after they arrived.[2]

Defendant was indicted for first degree murder. During defendant's trial, defendant requested that the jury be instructed on accessory before the fact of first degree murder; the trial court denied defendant's request. The jury found defendant guilty of first degree murder. Defendant was sentenced to life imprisonment without parole. Defendant appeals.

---

1. We have not found nor has the State directed our attention to, any evidence in the record of the distance from defendant's father's house to Kmart.

2. We have not found nor has the State directed our attention to, any evidence in the record of the distance from defendant's father's house to Food Lion. We realize that the trial judge and jurors in Randolph County may have been familiar with the locations of the local Kmart and Food Lion, but we cannot discern these distances, even by judicial notice, without evidence of the miles between locations, addresses or travel time between locations.

## II. Requested Jury Instruction

**[1]** Defendant's only contention on appeal is that

> the court erred by refusing to instruct the jury on the lesser included offense of accessory before the fact to first degree murder where the jury could have concluded that . . . [defendant] was an accessory and that her conviction was solely based on the uncorroborated testimony of Dylan Boston.

Defendant requested that an accessory before the fact to first degree murder instruction be given, and the trial court declined to give it. "We review the trial court's denial of the request for an instruction on the lesser included offense de novo." *State v. Laurean*, ___ N.C. App. ___, ___, 724 S.E.2d 657, 660, *disc. review denied and appeal dismissed*, ___ N.C. ___, 731 S.E.2d 416 (2012).

### A. Failure to Provide Requested Jury Instruction Was Error

In *State v. Willis*, the defendant appealed and made the same argument as defendant here assigning error

> to the failure of the court to submit to the jury as a possible verdict accessory before the fact of murder. . . .
>
> . . . .
>
> [The defendant] contend[ed] that there was evidence from which the jury could find she was an accessory before the fact of first degree murder and the evidence against her consisted of the uncorroborated testimony of principals or accessories. If the jury had so found, she would have escaped the death penalty.

332 N.C. 151, 176, 420 S.E.2d 158, 170 (1992).

Our Supreme Court stated,

N.C.G.S. § 14–5.2 provides:

> All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony. However, if a person who heretofore would have been guilty and punishable

as an accessory before the fact is convicted of a capital felony, and the jury finds that his conviction was based solely on the uncorroborated testimony of one or more principals, coconspirators, or accessories to the crime, he shall be guilty of a Class B felony.

. . . .

An accessory before the fact is one who is absent from the scene when the crime was committed but who participated in the planning or contemplation of the crime in such a way as to counsel, procure, or command the principal(s) to commit it. Thus, the primary distinction between a principal in the second degree and an accessory before the fact is that the latter was not actually or constructively present when the crime was in fact committed.

The crime of accessory before the fact to first degree murder is a lesser included offense of first degree murder. If there is evidence showing the commission of a lesser included offense, the judge must instruct on this offense. If all the evidence shows the commission of the greater offense, the court should not charge on the lesser included offense simply because the jury might not believe some of the evidence.

In this case, all the evidence showed that when the killing occurred, the defendant Cox was on the front porch of her house within sight of the killing, which was done at the end of her driveway. If the jury believed this evidence, it would have to find the defendant Cox was at least constructively present as we have defined it. It was not error to decline to submit accessory before the fact as a lesser included offense. This assignment of error is overruled.

*Id.* at 176-77, 420 S.E.2d at 170 (citations and quotation marks omitted).

Here, the State has not directed our attention to any evidence which indicates defendant was actually present during the commission of the crime; the evidence indicated that defendant dropped Mr. Boston and Mr. Mabe off near her father's home and then met them

again after the murder was completed and the men had left the crime scene. The evidence does not reveal the actual distance between the murder scene and the Kmart, where defendant claimed she waited during the murder, or the location of the Food Lion, where defendant met Mr. Boston and Mr. Mabe after the murder. The evidence shows that Mr. Boston and Mr. Mabe drove defendant's father's car from the crime scene to Food Lion and indicates that it took at least a few minutes to drive between these two locations; the evidence further shows that it took defendant a minute or two longer to arrive at the Kmart parking lot than it did Mr. Mabe and Mr. Boston. Thus, considering all this evidence, even in the light most favorable to the State, it appears that the murder scene was not immediately adjacent to either Kmart or Food Lion. Thus, we must consider whether defendant was constructively present while her father was being murdered. "A person is constructively present during the commission of a crime if he or she is close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime." *Id.* at 175, 420 S.E.2d at 169.

The State contends that the evidence shows defendant was constructively present during the commission of the crime and directs this Court's attention to cases in which constructive presence was found on the part of the defendant; however, in all of these cases there was evidence the defendant actually remained near the crime scene with the purpose of rendering aid. *See State v. Price*, 280 N.C. 154, 156-59, 184 S.E.2d 866, 868-69 (1971) (noting that the defendant waited by the corner of the store where a man was robbed in order to pick up the robbers and stating, "The remaining question is whether the evidence is sufficient to show that the defendant was a perpetrator of it. One who procures or commands another to commit a felony, accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, *remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close to the scene of the offense to render aid in its commission, if needed, or to provide a means by which the actual perpetrator may get away from the scene upon the completion of the offense, is a principal in the second degree and equally liable with the actual perpetrator.* By its express terms G.S. § 14-87 extends to one who aids and abets in an attempt to commit armed robbery. The State's evidence, considered as above stated, is ample to support a finding by a jury that the defendant so participated in the attempt to rob Lowery." (emphasis added) (citation omitted)); *State v. Pryor*, 59 N.C. App. 1,

9, 295 S.E.2d 610, 616 (1982) ("The State's evidence was sufficient for the jury to find that the defendant dropped the perpetrators off, *waited in the vicinity, was in a position to aid them by providing the get-away car,* and that this aid constituted knowing encouragement to the commission of the armed robbery." (emphasis added) (quotation marks omitted)); *State v. Gregory,* 37 N.C. App. 693, 695, 247 S.E.2d 19, 21 (1978) ("The evidence shows that the three planned the crime, drove to the scene in defendant's car, and *defendant remained waiting in the area.* Newsome testified that 'John *(defendant) would drive his car there for the pickup.* When we went out of the theater, we proceeded to walk across the street to the parking deck. We got to the parking deck and then turned and walked up towards Oberlin Road. As we neared Oberlin Road, I saw John's car. John pulled out to meet us.' " (emphasis added) (ellipses and quotation marks omitted)).

Here, the evidence showed that defendant's possible criminal actions occurred before the commission of the murder and after Mr. Mabe and Mr. Boston had committed the murder and had already safely left the crime scene. None of the evidence mentioned by the State shows that defendant remained "close enough to be able to render assistance if needed[.]" *Willis,* 332 N.C. at 175, 420 S.E.2d at 169. Instead, this case is more akin to *State v. Wiggins,* wherein

> [t]he evidence . . . show[ed] that defendant was not actually present during the perpetration of the robbery but was in a house ten to fifteen blocks away. However, the actual distance of a person from the place where a crime is perpetrated is not always material in determining whether the person is constructively present. See for instance, *State v. Chastain,* 104 N.C. 900, 10 S.E. 519, where defendant was 150 yards from the scene, armed with a rifle which would be fatal at that distance, with intent to use it to back up his brother, the perpetrator, if required. A guard who has been posted to give warning, or the driver of a get-away car, may be constructively present at the scene of a crime although stationed a convenient distance away. One who procures or commands another to commit a felony, accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close to the scene of the offense to render aid in its commission, if needed, or to provide

a means by which the actual perpetrator may get away from the scene upon the completion of the offense, is a principal in the second degree and equally liable with the actual perpetrator. A person is deemed to be constructively present if he is near enough to render assistance if need be and to encourage the actual perpetration of the felony.

There is no evidence in the record which would support a finding that at the time the robbery was committed, defendant was situated where he could give Anderson any advice, counsel, aid, encouragement or comfort, if needed, while Anderson was perpetrating the robbery. Thus, defendant was neither actually nor constructively present at the time, and he could be guilty, at most, of being an accessory before the fact. An accessory before the fact is one who meets every requirement of a principal in the second degree except that of presence at the time. The evidence here would support a conviction for an accessory before the fact to armed robbery.

16 N.C. App. 527, 530-31, 192 S.E.2d 680, 682-83 (1972) (citations and quotation marks omitted).

Here, there was no evidence that defendant was constructively present and thus "close enough to be able to render assistance if needed and to encourage the actual perpetration of the crime." *Willis*, 332 N.C. at 175, 420 S.E.2d at 169. Without evidence of defendant's actual or constructive presence at the scene of the crime during the time her father was being murdered, the evidence against defendant showed only that she was "[a]n accessory before the fact . . . [in that she was] absent from the scene when the crime was committed but . . . participated in the planning or contemplation of the crime in such a way as to counsel, procure, or command the principal(s) to commit it." *Id.* at 176, 420 S.E.2d at 170. Accordingly, the trial court erred in failing to instruct the jury on accessory before the fact to first degree murder. *See Wiggins*, 16 N.C. App. at 531, 192 S.E.2d at 682-83.

B.  Failure to Provide Requested Jury Instruction Was Prejudicial

[2]  Citing N.C. Gen. Stat. § 14-5.2, defendant contends that the trial court's error in failing to properly instruct the jury resulted in prejudice as with a proper instruction she may have only been sentenced to a class B2 felony rather than a class A felony. N.C. Gen. Stat. § 14-5.2 provides,

All distinctions between accessories before the fact and principals to the commission of a felony are abolished. Every person who heretofore would have been guilty as an accessory before the fact to any felony shall be guilty and punishable as a principal to that felony. *However, if a person who heretofore would have been guilty and punishable as an accessory before the fact is convicted of a capital felony, and the jury finds that his conviction was based solely on the uncorroborated testimony of one or more principals, coconspirators, or accessories to the crime, he shall be guilty of a Class B2 felony.*

N.C. Gen. Stat. § 14-5.2 (2007) (emphasis added). The State contends that any error on the part of the trial court in the jury instructions was not prejudicial as the State presented overwhelming evidence of first degree murder and the second sentence of N.C. Gen. Stat. § 14-5.2 is not applicable to defendant.

1. Capital Felony

The first requirement of N.C. Gen. Stat. § 14-5.2 for defendant to have the potential of being sentenced to a Class B2 felony is that she was "convicted of a capital felony[.]" *Id.* Defendant was not tried capitally; however, defendant was convicted of first degree murder, "a capital felony[.]" N.C. Gen. Stat. § 14-5.2; *see State v. Cummings,* 352 N.C. 600, 631-32, 536 S.E.2d 36, 58-59 (2000), *cert. denied,* 532 U.S. 997, 149 L.Ed. 2d 641 (2001). Our Supreme Court has determined that the designation of "a capital felony" depends upon the fact that the death penalty is a potential punishment for the crime; even if a defendant is not tried capitally, first degree murder is still "a capital felony[.]" N.C. Gen. Stat. § 14-5.2; *Cummings,* 352 N.C. at 631-32, 536 S.E.2d at 58-59. In *Cummings,* our Supreme Court addressed this issue:

Defendant argues, therefore, that since he was not eligible for the death penalty by virtue of his plea, he was not convicted of a capital felony . . . . We disagree.

. . . In defining a capital felony, it is necessary to interpolate definitions outlined in two different statutes. Section 14-17 of our General Statutes provides that a murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture, or by any other kind of willful, deliberate, and premedi-

tated killing shall be deemed to be murder in the first degree, a Class A felony, and any person who commits such murder shall be punished with death or imprisonment in the State's prison for life without parole as the court shall determine pursuant to G.S. 15A-2000. Section 15A-2000(a)(1) defines a capital felony as one which may be punishable by death. Reading these two sections together, there is no question that first-degree murder is a capital felony, and that the test is not the punishment which is imposed, but that which may be imposed. . . .

. . . A crime which is statutorily considered a capital felony maintains that status even if a defendant's case is not tried as a capital case. It is enough that if a defendant was tried capitally and convicted, he could have received a death sentence. Therefore, although defendant pled guilty to first-degree murder and, under the now repealed N.C.G.S. § 15-162.1, his case was not a capital case, the crime of first-degree murder was still a capital felony.

352 N.C. at 631-32, 536 S.E.2d at 58-59 (citations, quotation marks, ellipses, and brackets omitted); see also N.C. Gen. Stat. §§ 14-17 (2007) ("[M]urder in the first degree [is] a Class A felony, and any person who commits such murder shall be punished with death or imprisonment[.]"); 15A-2000(a)(1) (2007) ("A capital felony is one which may be punishable by death.")

Defendant was therefore "convicted of a capital felony."

2. Uncorroborated Testimony

Defendant argues that Mr. Boston's "testimony was critical to the first degree murder conviction. He testified that the plan was to kill the father and that he and [Mr. Mabe] went to the home to kill the father and for no other reason. [Defendant] denied any such intent." Defendant contends that she was convicted based upon the "uncorroborated testimony" of a principal. N.C. Gen. Stat. § 14-5.2. The State argues, and we agree, that the record before us includes ample evidence corroborating the testimony of Mr. Boston. Other witnesses and evidence such as surveillance cameras corroborated various significant aspects of Mr. Boston's testimony. Yet this Court cannot determine that "the jury" did or did not "base[]" defendant's "conviction" "solely on the uncorroborated testimony" of Mr. Boston. Id.

The language of N.C. Gen. Stat. § 14-5.2 requires that "the jury" determine whether the "conviction was based solely on the uncorroborated testimony of one or more principals, coconspirators, or accessories to the crime[.]" *Id.* As the standard jury instruction in North Carolina Pattern Instruction—Criminal ("N.C.P.I.") 101.15 states, the jury is "the sole judge[] of the believability of (a) witness(es). [It] must decide for [itself] whether to believe the testimony of any witness. [It] may believe all, any part, or none of a witness's testimony." N.C.P.I.-Crim. 101.15. N.C.P.I. 101.20 provides that the jurors are "the sole judges of the weight to be given any evidence." N.C.P.I.-Crim. 101.20. Accordingly, the jury itself must determine the credibility and weight of all of the evidence. *See* N.C.P.I.-Crim. 101.15, .20. Only the jury knows the evidence upon which it "base[d]" its verdict. *See* N.C. Gen. Stat. § 14-5.2. Thus, the jury itself must determine whether the testimony of "principals, coconspirators, or accessories to the crime" is corroborated so that the trial court may properly sentence a defendant of a class A or a class B2 felony. *See* N.C. Gen. Stat. § 14-5.2. Failure to submit this issue to the jury results in prejudicial error as there is no record of whether the jury viewed the testimony of the "principals, coconspirators, or accessories to the crime" as uncorroborated. N.C. Gen. Stat. § 14-5.2; *see State v. Larrimore*, 340 N.C. 119, 173, 456 S.E.2d 789, 818 (1995) ("In the instant case, the trial court failed to submit the special question to the jury regarding the basis of its verdict. Therefore, there is no record as to whether the jury based its decision solely on the uncorroborated testimony of McMillian or considered the corroborating evidence presented at trial as well. This constitutes error on the part of the trial court." (quotation marks omitted))[3].

---

3. We note that the Court in *Larrimore* concluded that the defendant was not prejudiced due to the failure of the trial court "to submit the special question to the jury regarding the basis of its verdict" because the sentencing structure at the time would result in a sentence of life imprisonment for both class A and class B felonies; however, the Court specifically noted that its holding was limited to convictions before 1994 as the new sentencing structure would result in different sentences for class A and class B felonies. *See Larrimore*, 340 N.C. at 173, 456 S.E.2d at 818-19 ("In the instant case, as in *Tucker*, were we to send this matter back to the trial court for resentencing as a Class B felony, the outcome in terms of sentence would be no different. N.C.G.S. § 15A–1371(a1) provides that a prisoner serving a term of life imprisonment with no minimum term is eligible for parole after serving 20 years. No distinction is made between a Class A life sentence and a Class B life sentence either in sentencing or in the manner in which the Department of Correction handles an individual. Throughout the General Statutes regarding parole and other sentence reducing considerations, Class A and Class B are consistently grouped together, as opposed to Class C and lower felonies. For the aforementioned reasons, we do not find that the defendant has been prejudiced by the trial court's error. We note, however, that this

Defendant was prejudiced as the proper instruction to the jury would have been accompanied by "the special question to the jury regarding the basis of its verdict" which in turn would have determined whether defendant should have been sentenced to a class A or class B felony. *Larrimore*, 340 N.C. at 173, 456 S.E.2d at 818; *see* N.C. Gen. Stat. §§ 15A-1443 (2007) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."), 14-5.2; *see also* N.C.P.I.-Crim. 202.30. Accordingly, defendant must receive a new trial.

### III. Conclusion

For the foregoing reasons, we remand for a new trial.

NEW TRIAL.

Judge ELMORE concurs.

Judge BEASLEY concurred prior to 17 December 2012.

---

holding is limited to cases tried on or before 1 October 1994, as the new sentencing guidelines effective that date create marked distinctions between Class A and Class B felonies." (citations, quotation marks, and brackets omitted)). Pursuant to North Carolina General Statute § 15A-1340.17 class A felonies subject a criminal to "[l]ife [i]mprisonment [w]ithout parole or [d]eath as [e]stablished by [s]tatute" whereas class B2 felonies subject a criminal to a specific number of months of imprisonment. N.C. Gen. Stat. § 15A-1340.17 (2007).