IN THE SUPREME COURT OF NORTH CAROLINA

No. 30PA13

Filed 19 December 2014

STATE OF NORTH CAROLINA

v.

BRANDI LEA GRAINGER

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 741 S.E.2d 364 (2012), vacating a judgment entered on 4 October 2011 by Judge Edgar B. Gregory in Superior Court, Randolph County, and remanding for a new trial. Heard in the Supreme Court on 6 January 2014.

> *Roy Cooper, Attorney General, by Mary Carla Hollis, Assistant Attorney General, for the State-appellant.*
>
> *Duncan B. McCormick for defendant-appellee.*

HUDSON, Justice.

The State seeks review of the opinion of the Court of Appeals granting defendant a new trial on her conviction of first-degree murder. The Court of Appeals held that a new trial was merited because the trial court erred in failing to instruct the jury on accessory before the fact under N.C.G.S. §14-5.2 and that the error was prejudicial. *State v. Grainger*, ___ N.C. App. ___, ___, 741 S.E.2d 364, 370 (2012). Because defendant was convicted of first-degree murder under theories of both premeditation and deliberation and the felony murder rule, and defendant's

conviction for first-degree murder under the theory of felony murder is supported by the evidence, we hold that no new trial is required, and we reverse the opinion of the Court of Appeals.

After pleading not guilty, defendant was tried noncapitally at the 26 September and 3 October 2011 criminal sessions of Superior Court, Randolph County. The State's evidence at trial tended to show the following: In 2008 defendant, her mother, Mr. Phillip Mabe, and Mr. Dylan Boston conspired to kill defendant's father. Boston testified that Mabe and he discussed with defendant their plan to murder the victim and make it look like a robbery. In exchange for killing her father, defendant promised Mabe and Boston money from the victim's life insurance policy. On 6 September 2008, defendant picked up Mabe and Boston in her car, drove them by her house to show them where her father would be, and then dropped them off nearby. At that point, defendant knew that Boston was carrying a gun in his pant leg. Mabe and Boston went to the Grainger residence, shot the victim in the head, took some items from a lock box, and left the house in the victim's car. Defendant did not accompany Mabe and Boston to the residence; she was shopping with her mother and cousin at Kmart. After Boston and Mabe left defendant's house, they called defendant to pick them up at a Food Lion parking lot. She did so, dropped them off at Mabe's house, and then went back to Kmart. Defendant and her mother "discovered" the victim's body later that night and called the police.

Defendant told a different story. Although she did not testify at trial, she did give several statements to the police over the course of their investigation. After initially denying any involvement, defendant eventually told the police that she had planned an attack on her father, but that the plan was just for Mabe and Boston "to go in the front door, trash the place and to freak my dad, Paul Grainger, freak him out a little bit, scare him." She did not admit that there was any plan to kill her father, or even to rob him.

During the jury charge conference, defendant requested an instruction on accessory before the fact under N.C.G.S. § 14-5.2. Section 14-5.2 states in relevant part:

> [i]f a person who heretofore would have been guilty and punishable as an accessory before the fact is convicted of a capital felony, and the jury finds that his conviction was based solely on the uncorroborated testimony of one or more principals, coconspirators, or accessories to the crime, he shall be guilty of a Class B2 felony.

N.C.G.S. § 14-5.2 (2013). The trial court declined to give the instruction. The jury returned a verdict finding defendant guilty of first-degree murder: "A. On the basis of malice, premeditation and deliberation" and "B. Under the first degree felony murder rule." She was sentenced to life imprisonment without parole. Defendant appealed. The Court of Appeals ordered a new trial, reasoning that it was error for the trial court not to have given the accessory before the fact instruction and that

the error was prejudicial. *Grainger*, ___ N.C. App. at ___, 741 S.E.2d at 370. The State filed a petition for discretionary review, which we allowed.

Defendant argues that she was entitled to the instruction on accessory before the fact because of a conflict in the evidence regarding her intent towards her father. She denied planning to kill her father, admitting only that she wanted Boston and Mabe to rough him up and "scare him," while Boston testified that the plan was to murder the father. Defendant argues that this conflict shows that Boston's testimony was uncorroborated and that the "uncorroborated testimony of one . . . principal[ ]" entitled her to the instruction. N.C.G.S. § 14-5.2

Defendant argues extensively that section 14-5.2 applies to her because any first-degree murder trial involves a "capital felony" within the purview of N.C.G.S. § 15A-2004, regardless of whether she was tried capitally or not. The State responds otherwise, contending that section 14-5.2 does not apply to defendant or others like her who are not tried capitally and thus are not subject to the death penalty as a possible punishment. The Court of Appeals resolved this issue in favor of defendant, holding that first-degree murder is statutorily a capital felony, even if she was not tried capitally, relying on our decision in *State v. Cummings*, 352 N.C. 600, 631-32, 536 S.E.2d 36, 58-59 (2000), *cert. denied*, 532 U.S. 997 (2001). *Grainger*, ___ N.C. App. at ___, 741 S.E.2d at 369.

The Court of Appeals did not discuss that defendant was also convicted of first-degree murder under the theory of felony murder; however, we conclude that because the evidence supporting her conviction on this theory does not rely solely on the uncorroborated testimony of a principal, section 14-5.2 does not apply to her conviction on this theory. The record reveals that defendant's own statements to the police provide support for her conviction for first-degree felony murder. "[T]o support convictions for a felony offense and related felony murder, all that is required is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction." *State v. Thomas*, 329 N.C. 423, 434-35, 407 S.E.2d 141, 149 (1991). Here defendant herself admitted that she asked Mabe and Boston to "freak out" her father; whether she intended her father to be murdered is superfluous under this theory. "A felony comes within the purview of the felony murder rule if its commission or attempted commission creates a substantial foreseeable risk to human life and actually results in the loss of life." *State v. Hutchins*, 303 N.C. 321, 345, 279 S.E.2d 788, 803 (1981) (citation omitted). Certainly, sending Mabe and Boston to attack her father, knowing they were armed, "create[d] a substantial foreseeable risk to human life." *Id.* In our review of defendant's conviction under the felony murder rule, we need not consider the testimony of coconspirator Boston regarding her intent, as we would if reviewing a conviction solely under the theory of premeditation and deliberation. Therefore, because her conviction for first-degree murder under a theory of felony

murder is supported by ample evidence, defendant's conviction must stand. *Cf. State v. McLemore*, 343 N.C. 240, 249, 470 S.E.2d 2, 7 (1996) (concluding that "[a]lthough the defendant should not have been convicted of felony murder, the verdict cannot be disturbed if the evidence supports a conviction based on premeditation and deliberation"). Accordingly, the decision of the Court of Appeals is reversed.

REVERSED.

Justices BEASLEY and HUNTER did not participate in the consideration or decision of this case.